CK.5603

Angela Bortel, Esq.
The Bortel Firm, LLC
825 Nicollet Mall, Ste. 811
Minneapolis, MN 55402
612.388.3366
abortel@bortelfirm.com
MN Bar No. 0387231
CA Bar No. 233411

RECEIVED
14 MAR 11 PM 1:52
CLERK, U.S. DIST. COURT
ST. PAUL, MN

## U.S. FEDERAL DISTRICT COURT

## DISTRICT OF MINNESOTA

| | |
|---|---|
| HUMBERTO CAMPIS ABARCA, | Civil File No. 14cv686 DSO)TM |
| Plaintiff, | |
| v. | |
| PATRICK LITTLE, AN INDIVIDUAL AND CHIEF EXECUTIVE OFFICER OF L & K LANDSCAPING, INC.; L & K LANDSCAPING, INC., A MINNESOTA CORPORATION; AND L & K TREE & SHRUB, INC., A MINNESOTA CORPORATION; DEBORAH LITTLE, AN INDIVIDUAL AND CHIEF EXECUTIVE OFFICER OF L & K TREE & SHRUB, INC.; AND MICHAEL KUKA, AN INDIVIDUAL AND CO-OWNER OF L & K LANDSCAPING, INC. | **PLAINTIFF'S COMPLAINT FOR DAMAGES**<br><br>**JURY TRIAL DEMANDED** |
| Defendants. | |



SCANNED
MAR 1 2 2014
U.S. DISTRICT COURT MPLS

Plaintiff Humberto Campis Abarca for his Complaint against Defendants states and alleges as follows:

## **INTRODUCTION**

1.  Plaintiff endured years of subjugation, isolation, threats and debt bondage at the hands of his trafficker, Defendant Patrick Little and his co-Defendants.  Defendant Patrick Little used these and other tactics to keep and maintain Plaintiff in involuntary servitude.  Mr. Little, owner of L&K Landscaping, Inc., and agent of L & K Tree and Shrub, Inc., recruited and obtained Plaintiff in order to work for L&K Landscaping, Inc., and L & K Tree and Shrub, Inc in whatever capacity Mr. Little ordered.  Although Plaintiff was recruited to do landscaping work, Mr. Little also forced him to perform all kinds of work, including cleaning and maintaining Defendant Patrick Little's own home.

2.  Mr. Little coerced Plaintiff to continue working for him and maintained him in involuntary servitude by fraudulently promising him a visa, forcing him into high levels of debt that could not be repaid without continuing to work, degrading Plaintiff, forcing him to work constantly, keeping him in substandard living conditions, isolating him, and threatening the life and safety of Plaintiff and his family, both verbally and with weapons and physical force.

3.  Plaintiff feared  physical attack, death and disappearance, arrest, familial bankruptcy, and the loss of ability to seek any remedy for Defendants' wrongs if he failed to work. Defendants Patrick Little and Michael Kuka threatened Plaintiff with deportation or criminal consequences.  Defendant Patrick Little even told Plaintiff that if he returned to Mexico, Mr. Little would come to Mexico to find him.  There were also threatening calls to Plaintiff's family in Mexico.

4.   Defendants subjected  Plaintiff to forced labor, involuntary servitude, debt bondage, and human trafficking in violation of United States, Minnesota and international law.

## **THE PARTIES**

5.   Plaintiff Humberto Campis Abarca is a citizen of Mexico who was forced to perform work in order to pay off mounting, unspecified, never satisfied debt to Defendant Patrick Little and Defendants L & K Landscaping, Inc., and L & K Tree & Shrub, Inc., located in this District. [Hereinafer "Defendant Entities"].  He currently resides in this District, under a T visa, which is a type of visa reserved for victims of human trafficking. This was approved on March 30, 2013. Some of Defendants' records incorrectly list Plaintiff's last name as "Campos" instead of "Campis."

6.   Patrick Little is an individual residing in this district. At all times relevant to this Complaint, Mr. Little resided in St. Michael, Minnesota. He is married to Defendant Deborah Little.

7.   L & K Landscaping, Incorporated, is a business corporation established under Minnesota Statute section 302A on June 17, 1988.  Its registered office address is located at 3333 Iffert Avenue, NE, St. Michael, MN 55376.  Defendant Patrick Little is its Chief Executive Officer.  Defendant Michael Kuka is a co-officer or otherwise co-owner of Defendant entity.  At all times relevant to this Complaint, L & K Landscaping, Inc. was a Minnesota business conducting business activities in Minnesota. Plaintiff worked for this company.

8.  L & K Tree & Shrub, Incorporated, is a business corporation established under Minnesota Statute section 302A on July 14, 2000.  Its registered office address is located at 3240 Iffert Avenue, NE, St. Michael, MN 55376.  Deborah Little is its Chief Executive Officer.  Defendant Little also exercises managing and/or executive authority for this entity.  At all times relevant to this Complaint, L & K Tree & Shrub, Inc. was a Minnesota business conducting business activities in Minnesota. Plaintiff worked for this company.

9.  Defendant Deborah Little is an individual residing in this district. At all times relevant to this Complaint, Mrs. Little resided in St. Michael, Minnesota. As noted above, she is Chief Executive Officer of L & K Tree & Shrub, Inc. She is married to Defendant Patrick Little.

10. Defendant Michael Kuka is an individual residing in this district. At all times relevant to this Complaint, Mr. Kuka resided in Maple Plain, Minnesota. As noted above, he is co-owner of L & K Landscaping, Inc.


## JURISDICTION AND VENUE

11. This action arises under the Constitution and laws of the United States, as well as the laws of the State of Minnesota. This Court has jurisdiction over the subject matter of this Complaint under the Thirteenth Amendment to the United States Constitution, 28 U.S.C. section 1331; 28 U.S.C. section 1367; and the Trafficking Victims Protection Reauthorization Act, 18 U.S.C. section 1595.

12. Venue is proper in this Court pursuant to 28 U.S.C. sections 1391(b) and (c) because Defendants reside in the District of Minnesota and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in the District of Minnesota.

## FACTUAL ALLEGATIONS

13. Plaintiff is a Mexican national who is around 41 years old. His native language is Spanish. He has limited English skills, particularly during the time relevant to this Complaint, around 2000 through 2008.

### Defendant Patrick Little Convinces Plaintiff to Work for Him in the United States.

14. Plaintiff was in the United States and learned from a friend about a job opportunity with Defendant L & K Tree & Shrub, Inc.

15. Defendant Patrick Little convinced Plaintiff to work for him by promising to obtain a work visa for him. Plaintiff had a strong desire to work legally and thought this would be better for him, his earnings, his family and his future. Plaintiff wanted to work normally and have legal status in the United States. Relying on that promise, Plaintiff quit his previous job to work for Defendant Patrick Little and Defendant Entities.

16. Defendant Patrick Little told Plaintiff that he needed to return to Mexico to get the visa. On information and belief, the visa was for landscaping work.

17. Before leaving for Mexico, Plaintiff asked Defendant Little for some money to support his family. Plaintiff acknowledged this debt and was fully prepared to pay Defendant back this money upon his return.

18. In around December 2001, Plaintiff went to the U.S. Consulate in Mexico for a visa interview coordinated by Defendant Little or his agents. Prior to the interview, Defendant Patrick Little had instructed Plaintiff to answer "no" to all the officer's questions in order to get the visa. Due to the debt and his desperate desire to obtain this visa, Plaintiff followed that directive. Officials denied Plaintiff the visa because of his prior time in the United States without status. Naturally, Plaintiff was devastated and panicked about the debt.

19. Plaintiff called Defendant Patrick Little to explain the situation. He told Plaintiff that he had to return to Minnesota to work in order to pay off the debt. Defendant Patrick Little told Plaintiff to "enter the United States however you can, I will pay for your entry." Defendant Patrick Little promised Plaintiff a job and that he would arrange a legal visa the following year.

20. Defendant Patrick Little sent money to someone in Mexico who paid a coyote to bring Plaintiff to Minnesota.

21. PLAINTIFF entered the United States in around April of 2002. When PLAINTIFF arrived, Defendant Little told him that he was going to work Plaintiff hard because of the debt he owed. He said that PLAINTIFF had an initial debt of $2,000 plus the cost of the coyote. PLAINTIFF didn't know exactly how much the coyote cost because Defendant was never clear about the amount of debt. When PLAINTIFF asked him about the total amount of the debt, Defendant Patrick Little always got mad. He said that PLAINTIFF only needed to work and not ask questions. He shouted at Plaintiff, saying bad things about his mother. He threatened to hit Plaintiff in the face, to the best of Plaintiff's understanding.

22. This cycle continued for another year at least, with Defendant Patrick Little telling Plaintiff to return to Mexico for a visa, only for the consulate to deny him a visa. Plaintiff would work for Defendants Patrick Little, Deborah Little, Michael Kuka and Defendant Entities from around April through December. He would typically leave the United States in December and return from Mexico in April, always smuggled in by someone Defendant Patrick Little had paid.

23. In December of 2002, Defendant Patrick Little sent Plaintiff to Mexico again, promising again to obtain a visa. PLAINTIFF didn't want to go, but he needed to keep this job to earn money for his family. Again Defendant Little told Plaintiff it was necessary to go to the consulate to get the visa. But again, the consulate denied Plaintiff's visa request. They said he could not get a visa for five years, which devastated Plaintiff. He had taken on all of this debt in promise of good, *legal* work, and now he had nothing but the debt and a growing fear of Defendant Patrick Little.

24. When PLAINTIFF talked to Defendant Patrick Little, Little again said that Plaintiff must return to Minnesota to work and repay his debt. Plaintiff knew of the debt and felt he had no choice. PLAINTIFF had the initial debt of $2,000 and also the cost of the coyote from the year before. Defendant Patrick Little told him that if PLAINTIFF did not return to Minnesota to work, he was going to come to Mexico and look for him. Since he had Plaintiff's personal information, Plaintiff believed this threat. Then, PLAINTIFF looked for a coyote and Defendant Patrick Little sent the money to someone to pay for the coyote. Defendant Patrick Little added this amount for the coyote to the amount of Plaintiff's debt and said that PLAINTIFF needed to work to pay it off. When

PLAINTIFF tried to find out how much the debt totaled, Defendant Patrick Little would get very mad and never tell him the total.

25. In 2003, Defendant Patrick Little continued to promise a work visa to Plaintiff.

26. At the end of 2003, Defendant Patrick Little sent Plaintiff to Mexico again to try to get a visa but PLAINTIFF did not go to the consulate. After crossing the border to return to Minnesota, PLAINTIFF arrived in Phoenix, Arizona. PLAINTIFF was in the coyote's house and there were many other people there. PLAINTIFF called Defendant Patrick Little because PLAINTIFF needed to pay the coyote for bringing him to the United States and to Minnesota. Defendant Patrick Little agreed to pay for Plaintiff's transportation to Minnesota.

27. The driver arrived in Minnesota very late at night and PLAINTIFF went to ask for the money to pay the driver. Defendant Patrick Little had a pistol and said, "Money? No. You should kill the driver." PLAINTIFF told him no. He felt horrible and was very scared. Plaintiff knew that Defendant Patrick Little had weapons. Finally, Defendant Patrick Little gave the money to pay the driver.

28. This pattern more or less repeated every year. Defendant Patrick Little sent Plaintiff to Mexico in around November or December and paid a coyote to bring him back to the United States in March or April the following year. Defendant Patrick Little always added the amount for the coyote onto Plaintiff's debt, and so his debt kept growing. He could never earn enough to pay it off, or even learn exactly how much the debt was. It was a bottomless spiral of debt.

29. In this process, Defendants Patrick Little, Deborah Little, Michael Kuka and Defendant Entities caused Plaintiff to fall deeper and deeper into debt, which Defendant Patrick Little in particular used to threaten Plaintiff and coerce him to keep working.

**Defendants Subject Plaintiff to Involuntary Servitude and Debt Bondage.**

30. From the first moment when PLAINTIFF started working for Defendant Patrick Little, he promised him a visa. At the very beginning, he treated Plaintiff well because he said that PLAINTIFF was a good worker. That did not last long and rapidly deteriorated over time as Plaintiff's debt grew larger.

31. To Plaintiff's knowledge, many of the other workers had work visas. Although Defendant Patrick Little always promised Plaintiff a visa, he never got one. The other workers always asked Plaintiff to talk to Defendant Patrick Little about the work and the conditions because they were scared of saying something because their visas were connected to their jobs. They were intimidated by Defendant Patrick Little. If Defendant Patrick Little fired them for complaining, they lost their visas and would have to leave the United States.

32. The conditions where the workers worked and lived were bad. There weren't bathrooms. They either had two porta-potties or went to the bathroom in the trees for up to 25 people. There weren't showers either. The workers, including Plaintiff, used hoses to take showers. Sometimes there was running water in the house, sometimes there wasn't. The workers, including Plaintiff, slept in one room with up to 25 people and the room was the size of a hallway that way full of bunk beds. There was only one door to

leave. It was a sort of barn or storage facility that had been converted into a house for sleeping and living.

33. In the house for the workers, including Plaintiff, there wasn't really climate controlled. It would be boiling hot in the summer, especially because of the lack of windows or other egress. The house was close to Defendants' Patrick and Deborah Little's house. There was a kitchen inside but there were a lot of rats. If PLAINTIFF or the others complained, Defendant Patrick Little told them, "Shut up or I'm going to fire you."

34. For this house, the workers, including Plaintiff, paid about $100 per month. Defendant Deborah Little took care of issues relating to the house where the workers, including Plaintiff, lived. She had a list of names of all the workers and each month came to collect rent. Plaintiff always paid the rent, but other people didn't. When someone was behind in the rent payment for a couple months, then Defendant Patrick Little deducted the money from his paycheck.

35. One time, Plaintiff and other workers asked Defendant Patrick Little asked about renting a house in a different location but he told the workers, including Plaintiff, no. But he said no and would get very angry. PLAINTIFF asked Defendant Patrick Little about different house many times because the workers' house was very bad, without a bathroom. Sometimes when PLAINTIFF asked him, Defendant Patrick Little threatened him. He told PLAINTIFF to work harder.

36. One time in 2003, a friend of Plaintiff asked Defendant Patrick Little about water in the house because there wasn't water to take a bath. Defendant Patrick Little grabbed him and said "Shut up. Don't talk in English." Plaintiff's friend responded by saying,

"don't touch me." Then Defendant Patrick Little grabbed him and said, "I can do what I want because you are Mexican." The conversation was in English, but Plaintiff's friend explained this incident to him. This was a very intimidating incident to Plaintiff.

37. Workers, including Plaintiff, had a hard time getting food and things from the store. The property was very isolated in the country. They only had one van to share with everyone and only one worker had a license. Defendant Patrick Little bought the workers a van, but took money from the checks to pay for it. The workers, including Plaintiff, went to the store to buy food at night in groups. Sometimes, they had to walk and it took an hour or more to get to the store. One time, the police saw some workers on bicycles. When Defendant Patrick Little found out what happened, he told workers that they couldn't walk to the store to the store anymore.

38. Defendant Patrick Little charged workers, including Plaintiff, for food, too. Every 15 days, they had to pay $60 for food. With the rent, it was around $220 each month for food and the house. PLAINTIFF doesn't know if the checks of the other workers show these deductions but his did not show them.

39. Defendant Patrick Little did not pay the workers, including Plaintiff, very well. Defendant Patrick Little made Plaintiff and other workers work 11 or 12 hours per day for a small salary, different kinds of work. Defendant Patrick Little didn't pay the required overtime.

40. Defendant Patrick Little paid workers with checks, but then would say that after workers, including Plaintiff, cashed them, they had to return to some of the pay for various things. After returning from the bank, each person gave Defendant Patrick Little

all of his money. Defendant Patrick Little then took a portion and  gave the rest back to the person saying, "this is for you."

41. Plaintiff mostly received checks from L & K Shrub & Tree, Inc., but on occasion he also received pay checks from L & K landscaping.

42. Plaintiff often had to work more hours than other workers, often without sufficient breaks. Sometimes if Plaintiff finished at one job site, Defendant Patrick Little would make him go to another to continue working because Plaintiff "owed him."

43. Plaintiff often worked 54 hours at least per week, but was only paid for 40, with the exception of one check. That also did not include the cash deductions that Defandants Patrick and Deborah Little made for the housing, tools, food, van and phone calls.

44. Plaintiff was forced to clean Defendant Patrick and Deborah Little's home for meager wages on at least one occasion.

45. In 2002, Plaintiff sustained a knee injury on the job that continues to aggrieve him.

46. In 2006, Defendant Patrick Little ordered Plaintiff to train another worker. After this man was trained, there were more problems. There were many accidents and because of this, PLAINTIFF started to tell Defendant Patrick Little that the workers needed better conditions and treatment.

47. In the last year that PLAINTIFF worked for Defendant Patrick Little, his check was approximately $800 for 15 days and Defendant Patrick Little took $400 and gave him $400. This last year, Defendant Patrick Little took more from Plaintiff, saying that his debt to him was very large. The part of the salary that Defendant Patrick Little took was the deductions for the rent, the van, the debts, etc. Defendant also made Plaintiff  pay

the coyote fees of other two other workers. PLAINTIFF has a check, number 4904 that shows normal hours plus overtime, but it is the only one like this. All the other checks show the same pay but no overtime. In around December 2011, Plaintiff subsequently succeeded in collecting some unpaid overtime, approximately $905.96, from L & K Tree & Shrub, Inc., with help from the Department of Labor, Wage and Hour division.

48. Defendant Patrick Little deducted a lot of things from Plaintiff and other workers' checks and charged them for a lot of things. They had to pay Defendant Patrick Little for clothing and tools. He charged him $80 each year for tools even if they didn't need new ones. Often, Plaintiff's tools were only a shovel and clippers and PLAINTIFF didn't need new ones each year. Defendant Patrick Little charged him much more than a normal price for these things. PLAINTIFF never asked him about the costs of the tools because Defendant Patrick Little always got mad. If the machinery had trouble and didn't work for a bit, Defendant Patrick Little would deduct two hours pay from each person, even if they continued working on other things during that time.

49. PLAINTIFF felt like he had no other option but to work for Defendants Patrick Little, L & K Tree & Shrub, Inc., L & K Landscaping, Deborah Little and Michael Kuka because he was very scared and in debt. Defendant Patrick Little had a gun and showed it to Plaintiff many times. The first time that PLAINTIFF saw the gun was in 2003 when he was cleaning in front of the house.

50. In December of 2007, Defendant Patrick Little ordered Plaintiff to go to Mexico, but he could not because he had no money. PLAINTIFF stayed there living in Defendant Patrick Little's house for workers until approximately March 2008. He didn't want to see him in his house and wanted to get him out PLAINTIFF didn't have anywhere to go.

PLAINTIFF didn't really know anyone in Minnesota.  PLAINTIFF lived in his house for some more time. Defendant Patrick Little turned off the water in the house and the heat. PLAINTIFF had to deal with the cold and almost didn't bathe because there wasn't water.

51. Defendant Patrick Little wanted Plaintiff to leave and sent Michael Kuka to deliver a message. Defendant Kuka threatened to beat Plaintiff up if he didn't leave the house. PLAINTIFF told him that he had nowhere to go.  Defendant Kuka said that he was going to turn him in to immigration or the police. PLAINTIFF said that he didn't want trouble and went to the office.  Defendant Patrick Little was at his desk and PLAINTIFF told him that Defendant Kuka wanted to beat him up. But Defendant Patrick Little gave Plaintiff a knife and said to kill him, which Plaintiff refused to do.

52. PLAINTIFF talked with a friend and he loaned him a car, so he could leave.

53. On around March 12, 2008, before he had left Defendant Littles' property, the police stopped Plaintiff in St. Michael, MN while he was driving and were talking to him. PLAINTIFF didn't understand and asked the police for his telephone. PLAINTIFF talked to a supervisor who spoke Spanish and said that the police stopped him. The police only asked for his license and PLAINTIFF told him that PLAINTIFF didn't have one, but he only gave him a ticket. The officer asked Plaintiff for his address and PLAINTIFF gave Defendant Patrick Little's address. And Defendant Patrick Little, when he saw the ticket and the address on the ticket, got very angry.  Defendant Patrick little grabbed Plaintiff's arms roughly and said that if he had problems with the police, that Defendant Patrick Little was going to kill him and bury him behind the house and nobody would know what happened to Plaintiff.

54. After this incident, Plaintiff left because he was so scared.  Plaintiff was terrified and embarked on a journey marked by significant struggles.

55. PLAINTIFF reported his situation to the Department of Labor in 2008 or so.

56. In around May 2008, Plaintiff's family started receiving threatening calls in Mexico. PLAINTIFF  knows that the mother of his two youngest children, received threatening phone calls. PLAINTIFF told her that she should change the number and she did. But the calls continued and other time she changed the phone number. They changed the number approximately three times to try and evade these calls. Plaintiff believes that a frightened worker still working for Defendant Little provided the numbers to Defendant Patrick Little, who then orchestrated the calls.

57. Defendant Patrick Little kept Plaintiff in servitude by creating a large debt that Plaintiff was then obligated to pay back. He gave him money each year and told him that it was a debt that PLAINTIFF owed to him. The debt grew each year, $5000 or more each year. Defendant Patrick Little was always talking about this debt that he said PLAINTIFF owed to him. He never showed Plaintiff a ledger or other documentation about the debt, but only said that it was a lot of money, a very large debt. Based on this debt, he forced Plaintiff to work prolonged hours, without breaks to repay this debt. However, it seemed impossible to pay this debt off.

58. After finally escaping, PLAINTIFF changed his telephone so that Defendant Patrick Little couldn't communicate with him.  But PLAINTIFF heard from friends still working with Defendant Patrick Little that he ordered other people to call Plaintiff's family in Mexico in order to threaten them so that PLAINTIFF would go back to Mexico. After PLAINTIFF escaped from Defendant Patrick Little, he didn't want Plaintiff  to talk

to the police or other authorities and because of this, he wanted Plaintiff to go back to Mexico.

59. On information and belief, in 2008, after PLAINTIFF had escaped, the Department of Labor came to Defendant Patrick Little's camp. It came to investigate because PLAINTIFF had given information about Defendant Patrick Little and the conditions at the camp. PLAINTIFF heard of its visit from friends that were still working for Defendant Patrick Little at that time. On information and belief, after this visit, the next day, Defendant Patrick Little sent everyone to Mexico and took the money for the plane ticket from the last checks. They all left months before the expiration of their visas because of this incident.

60. Plaintiff's friend Fernando had come to work for Defendant Patrick Little in around 2009. He was managing the Mexicans like PLAINTIFF had done. Fernando told him that after PLAINTIFF left, Defendant Patrick Little didn't want to hear his name in the company. Fernando told him that Defendant Patrick Little was very angry and that if Defendant Patrick Little saw Plaintiff, he was going to kill him. Fernando told Plaintiff to be careful. He said that Defendant Patrick Little said that he could kill Plaintiff or send someone to kill him. This friend left for Mexico shortly thereafter.

## GOVERNING CIVIL REMEDY STATUTE (Federal)

61. 18 U.S.C. section 1595(a) provides that "[a]n individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation

of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys [sic] fees."

## CAUSES OF ACTION

### Count I

### Plaintiff Humberto Campis Abarca v. Defendants Patrick Little, L & K Landscpaing, Inc., and L& K Tree & Shrub, Inc.

### Enticement into Slavery (18 U.S.C. §§ 1583 & 1595)

62. Plaintiff realleges and incorporates herein by reference the allegations set forth in paragraphs 1 - 61 of this Complaint.

63. 18 U.S.C. sections 1583 and 1595 impose civil liability on any person who entices, persuades, or induces any other person to board any vessel with the intent that he or she may be made or held as a slave, or set out of the country to be so made or held.

64. Defendant Little, as an individual and on behalf of Defendants L & K Landscpaing, Inc., and L& K Tree & Shrub, Inc., persuaded Plaintiff to travel to the United States from his native Mexico with false promises of legal immigration status and work. Defendant Little, as an individual and on behalf of Defendants L & K Landscpaing, Inc., and L& K Tree & Shrub, Inc., promised to pay Plaintiff for services rendered.

65. Defendant Little, as an individual and on behalf of Defendants L & K Landscpaing, Inc., and L& K Tree & Shrub, Inc., made these representations, which were not true and meant solely to induce Plaintiff into slave-like conditions in the United States, where Plaintiff was forced to work often seven days per week for years, with little

or no breaks, to have his freedom restricted, and to fear for his life, all while living in substandard housing.

66. As a result of the acts of Defendant Little, as an individual and on behalf of Defendants L & K Landscpaing, Inc., and L& K Tree & Shrub, Inc., Plaintiff suffered damages. Pursuant to 18 U.S.C. section 1595, Plaintiff is entitled to recover damages and reasonable attorneys' fees for Defendant's wrongful conduct. Because of the malicious and wantonly abusive nature of Defendant Little's conduct, Plaintiff also is entitled to an award of punitive damages.

## Count II

## Plaintiff Humberto Campis Abarca v. Defendants Patrick Little, Michael Kuka, L & K Landscpaing, Inc., and L& K Tree & Shrub, Inc.

## Involuntary Servitude (18 U.S.C. §§ 1584 & 1595, and Thirteenth Amendment of the United States Constitution)

67. Plaintiff realleges and incorporates herein by reference the allegations set forth in paragraphs 1-66 of this Complaint.

68. The Thirteenth Amendment of the United States Constitution and its enforcing statute, 18 U.S.C. § 1584, prohibit involuntary servitude in private conduct.

69. Defendants knowingly and willfully forced Plaintiff to work in a condition of involuntary servitude through fear of harm, fear of deportation and police, legal coercion, and verbal threats directed at Plaintiff and his family.

70. As a result of Defendants' acts, Plaintiff suffered damages. Pursuant to 18 U.S.C. section 1595, Plaintiff is entitled to recover damages and reasonable attorneys' fees for

Defendant's wrongful conduct. Because of the malicious and wantonly abusive nature of Defendant Little's conduct, Plaintiff also is entitled to an award of punitive damages.

## Count III

**Plaintiff Humberto Campis Abarca v. Defendants Patrick Little, Michael Kuka, Deborah Little, L & K Landscpaing, Inc., and L& K Tree & Shrub, Inc.**

### Forced Labor (18 U.S.C. §§ 1589 & 1595)

71. Plaintiff realleges and incorporates herein by reference the allegations set forth in paragraphs 1-70 of this Complaint.

72. 18 U.S.C. sections 1589(a) and 1595 impose civil liability on any person who knowingly provides or obtains the labor or services of a person by any one of, or by any combination of, the following means: (1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person; (2) by means of serious harm or threats of serious harm to that person or another person; (3) by means of the abuse or threatened abuse of law or legal process; or (4) by means of any scheme, plan, or pattern intended to cause the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm."

73. As described above, Defendants induced Plaintiff into forced labor by means proscribed in Section 1589(a).  Defendants also knowingly benefitted, financially or by receiving something of value, from participation in a venture that engaged in the providing or obtaining of labor or services by means described in Section 1589(a). As a result, Plaintiff was compelled to continue laboring for them under inhuman conditions and suffered damages.

74. As a result of Defendants' acts, Plaintiff suffered damages. Pursuant to 18 U.S.C. section 1595, Plaintiff is entitled to recover damages and reasonable attorneys' fees for Defendant's wrongful conduct. Because of the malicious and wantonly abusive nature of Defendant Little's conduct, Plaintiff also is entitled to an award of punitive damages.

## Count IV

**Plaintiff Humberto Campis Abarca v. Defendants Patrick Little, L & K Landscaping, Inc., and L& K Tree & Shrub, Inc.**

**Trafficking with Respect to Peonage, Slavery, Involuntary Servitude, or Forced Labor (18 U.S.C. §§ 1590 & 1595)**

75. Plaintiff realleges and incorporates herein by reference the allegations set forth in paragraphs 1-74 of this Complaint.

76. 18 U.S.C. sections 1590 and 1595 impose civil liability on any person who knowingly recruits, harbors, transports, provides, or obtains by any means, any person for labor or services in violation of the Trafficking Victims Protection Reauthorization Act.

77. As described above, Defendants knowingly repeatedly recruited, harbored, and transported Plaintiff to obtain labor and services of Plaintiff in violation of the Trafficking Victims Protection Reauthorization Act.

78. As a result of Defendants' acts, Plaintiff suffered damages. Pursuant to 18 U.S.C. section 1595, Plaintiff is entitled to recover damages and reasonable attorneys' fees for Defendant's wrongful conduct. Because of the malicious and wantonly abusive nature of Defendant Little's conduct, Plaintiff also is entitled to an award of punitive damages.

**Count V**

**Plaintiff Humberto Campis Abarca v. Defendants Patrick Little, L & K**

**Landscpaing, Inc., and L& K Tree & Shrub, Inc.**

**Fraud and Fraudulent Inducement**

79. Plaintiff realleges and incorporates herein by reference the allegations set forth in paragraphs 1-78 of this Complaint.

80. To entice Plaintiff to travel to the United States, Defendants, themselves and through their contacts, agents, and associates in Mexico and the United States, intentionally made implicit and explicit promises and representations to Plaintiff about what his job, immigration status and life would be like in the United States. Among other promises and representations, Defendant Little at least on two occasions promised to obtain a legal working visa for Plaintiff.  He also told Plaintiff he would have a job that would allow him to earn money and pay off his debts in a short period of time.

81. Defendants made these promises and assurances to Plaintiff knowing that they were false and with the intent that Plaintiff  rely on the promises and travel to the United States.

82. These promises and representations were material to Plaintiff, who reasonably relied on them and traveled to the United States repeatedly.

83. Once in the United States, Defendants made further promises and representations to Plaintiffs about their life and job at Defendants L & K Tree & Shrub, Inc., and L & K Landscaping, Inc. Among other things, Defendants represented that the Plaintiff could earn a decent wage and obtain immigration status by working at L & K Tree &Shrub, and that Defendants would pay Plaintiff for his work at Defendant entities. Through their

initial, intentional conduct, Defendants also led Plaintiff to believe that they would be treated with respect and obtain legal immigration papers for him.

84. Defendants had no intent to honor these promises; rather, Defendants knew that their promises and representations were hollow and false. These promises and representations were material to Plaintiff, who reasonably relied on them in working for Defendants.

85. As a result of Defendants' deception and false representations, Plaintiff lost their freedom and worked under abusive conditions in the United States, with little compensation.

86. Plaintiff has suffered compensable injury, including chronic physical injury, economic loss and mental anguish from psychological abuse.

87. Plaintiff is entitled to recover for his injuries an amount to be determined at trial. Furthermore, because Defendants' tortious conduct was aggravated by their willfulness, wantonness, and malice, Plaintiff may recovery exemplary damages in an amount to be determined at trial.

**Count VI**

**Plaintiff Humberto Campis Abarca v. Defendants Patrick Little, Deborah Little, Michael Kuka, L & K Landscpaing, Inc., and L& K Tree & Shrub, Inc.**

**Negligence Per Se**

88. Plaintiff realleges and incorporates herein by reference the allegations set forth in paragraphs 1-87 of this Complaint.

89. The services provided by Plaintiff to Defendants were performed under conditions that violated the Fair Labor Standards Act ("FLSA") and Minnesota state law as alleged in this Complaint. *See* 29 U.S.C. § 206 (minimum wage requirements); Minn. Stat. § 177.24 (payment of minimum wage); Minn. Stat. § 177.23, subd. 7 (overtime requirement). All Defendants have known or reasonably should have known of these egregious and ongoing violations, yet have done nothing to investigate, remedy, or report them to the appropriate authorities.

90. The minimum wage, overtime, and other provisions of the FLSA and Minnesota state law were enacted to protect workers from economic and personal injuries caused by poverty-level wages, unduly long hours, and other substandard working conditions. The acts and omissions of Defendants as alleged in this Complaint were a substantial factor contributing to the illegal and substandard working conditions under which Plaintiff labored for many years.

91. Plaintiff is among the class of persons that the FLSA and Minnesota law were designed to protect and for whose protection the foregoing statutes and regulations were adopted. Plaintiff's physical, economic and mental injuries are of the type that the foregoing statutes and regulations are intended to prevent.

92. Defendants' violations of the foregoing statutes and regulations constituted negligence per se and created a presumption of negligence.

93. As a direct and proximate result of Defendants' acts and omissions as alleged in this Complaint, Plaintiff has suffered and continues to suffer economic damages, in an amount, nature, and degree to be proven at trial. Defendants' conduct as described in this Complaint was malicious, fraudulent, and/or oppressive, and done with a conscious

disregard for the rights of the Plaintiff and for the deleterious consequences of the Defendants' actions. Each Defendant authorized, condoned, and/or ratified the unlawful conduct of all the other Defendants named in this action and of their agents and employees. Consequently, the Plaintiff is entitled to an award of punitive damages.

## Count VII

### Plaintiff Humberto Campis Abarca v. Defendants Patrick Little, Michael Kuka, L & K Landscaping, Inc., and L& K Tree & Shrub, Inc.

### Negligent Infliction of Emotional Distress

94. Plaintiff realleges and incorporates herein by reference the allegations set forth in paragraphs 1-93of this Complaint.

95. Defendants had a duty of reasonable care to Plaintiff, and they breached this duty by acting negligently and failing to exercise reasonable care.

96. Defendants negligently engaged in extreme and outrageous conduct that they knew or should have known involved an unreasonable risk of causing severe emotional distress to the Plaintiff.

97. Defendants' conduct which negligently inflicted emotional distress included, but is not limited to, the use of physical and mental coercion to force Plaintiff to perform manual labor; the manipulation of the legal process to force continued labor; the nonconsensual transportation of Plaintiff to Minnesota on multiple occasions over a period of years; the refusal to provide prompt medical treatment after workplace injuries; the refusal to pay legally required minimum wages and overtime for work performed; the isolation of Plaintiff to the work place and Defendant Little provided Plaintiff and other

workers; the enforced isolation of Plaintiff from communication with family members; providing substandard housing lacking proper plumbing, heating and cooling and egress; the failure to identify and remedy workplace violations of federal and state laws; the negligent hiring and supervision of agents and/or contractors; and a consistent manipulation of foreign workers unfamiliar with both the language and legal process of the United States. Defendant Little also threatened Plaintiff and his family. Defendant Kuka threatened Plaintiff with deportation.

98. Plaintiff suffered severe emotional distress that included emotional reactions such as extreme fear for himself, other workers and his family, shame, humiliation, panic, sleeplessness, nightmares, embarrassment, anger, disappointment, worry, helplessness, inability to trust others, powerlessness and fear for his own life.

99. Defendants' negligent acts were the proximate cause of the distress and injuries that Plaintiff suffered.

100.    Plaintiff acted at all times in a careful and prudent manner and in the exercise of due care and caution.

101.    Further, Defendants negligently engaged in conduct that was outrageous, wanton, and malicious, imbued with an evil motive and violence, and performed with a reckless indifference to the interests of Plaintiff. Accordingly, Plaintiff is entitled to punitive damages for Defendants' negligent infliction of emotional distress.

102.    Plaintiff are entitled to monetary relief for both compensatory and punitive damages in an amount to be determined at trial.

**Count VIII**

**Plaintiff Humberto Campis Abarca v. Defendants Patrick Little, Deborah Little, Michael Kuka, L & K Landscaping, Inc., and L& K Tree & Shrub, Inc.**

**Unjust Enrichment**

103.     Plaintiff realleges and incorporates herein by reference the allegations set forth in paragraphs 1-102 of this Complaint.

104.  .     Plaintiff rendered services ranging from outdoor work, to laying floors, to heavy labor, to domestic service in Defendant Little's own home in good faith with the expectation that he would be fairly compensated for that work.

105.     The Defendants accepted these services and then failed to properly compensate Plaintiff for the fair market value of his services.

106.     The Defendants were unjustly enriched at Plaintiff's expense.

107.     At all times relevant hereto, Defendants maintained a relationship of private master and servant with Plaintiff and Plaintiff was never employed as an employee of a governmental agency or authority.

108.     Plaintiff is entitled to recover damages in an amount to be proven at trial, including attorney's fees.

**Count IX**

**Plaintiff Humberto Campis Abarca v. Defendants Patrick Little, Deborah Little, Michael Kuka, L & K Landscaping, Inc., and L& K Tree & Shrub, Inc.**

**Breach of Contract**

109.     Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1-108 of this Complaint.

110.     Plaintiff and Defendants entered into an employment agreement whereby Defendant Little and Defendant entities agreed to pay Plaintiff hourly for his work in the companies. In around December 2001 and again in December 2002, Defendant Little individually and on behalf of the Defendant Entities promised to get Plaintiff a worker visa.

111.     Defendants intentionally and willfully failed and sometimes refused to pay Plaintiff his required wages and overtime, often stating that Plaintiff "owed" Defendant Little for the smuggling fees he had paid.

112.     Defendants' refusal to pay Plaintiff and observe the proper laws on minimum wage, time off and overtime was conscious and a deliberate disregard of the interests of others, rendering this conduct willful or wanton, and this conduct has the level of outrageousness often associated with criminal conduct. s

113.     At all times relevant hereto, Defendants maintained a relationship of private master and servant with Plaintiff and Plaintiff was never employed as an employee of a governmental agency or authority.

114.     Plaintiff is entitled to recover damages in an amount to be proven at trial, including attorney's fees.


**Count X**

**Plaintiff Humberto Campis Abarca v. Defendant Deborah Little, L & K**

**Landscaping, Inc., and L& K Tree & Shrub, Inc.**

**Vicarious Liability**

115.     Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1-114 of this Complaint.

116.     At all relevant times, Defendant Patrick Little oversaw, managed, controlled and directed L & K Landscaping, Inc., by acting as its CEO.

117.     At all relevant times, Defendant Michael Kuka oversaw, managed, controlled and directed L & K Landscaping, Inc., by acting as a co-owner.

118.     At all relevant times, Defendant Deborah Little oversaw, managed, controlled and directed L & K Tree & Shrub, Inc., by acting as its CEO.

119.     In fact the operational boundaries between Defendant L &K Tree & Shrub, Inc., and L & K Landscaping were fluid and not formally maintained.

120.     While Defendant Patrick Little had no executive function in L& K Tree & Shrub, Inc., he oversaw the day-to-day work of laborers, including Plaintiff, and dealt with workers' concerns. As such, he engaged in activities on behalf of L & K Tree & Shrub. At all relevant times, L & K Tree & Shrub represented that Patrick Little was engaged in activities sponsored, managed and provided by L & K Tree & Shrub, Inc. At all relevant times, he acted as an agent of L & K Tree & Shrub, Inc. Through L & K Tree & Shrub, Inc., Defendant Patrick Little assumed a position that required workers, including Plaintiff, to deal with him in their day-to-day work, as well as with issues related to their housing. Plaintiff thought that Defendant Patrick Little was supposed to look out for his interests.

121.     While Defendant Michael Kuka had no executive function in L& K Tree & Shrub, Inc., he also drew plans for work and oversaw the day-to-day work of laborers, including Plaintiff. As such, he engaged in activities on behalf of L & K Tree & Shrub.

At all relevant times, L & K Tree & Shrub represented that Michael Kuka was engaged in activities sponsored, managed and provided by L & K Tree & Shrub, Inc. At all relevant times, he acted as an agent of L & K Tree & Shrub, Inc. Through L & K Tree & Shrub, Inc., Defendant Michael Kuka assumed a position that required workers, including Plaintiff, to deal with him in their day-to-day work, as well as with issues related to their housing. Plaintiff thought that Defendant Michael Kuka was supposed to look out for his interests.

122.    Defendant Patrick Little used his agency relationship with L & K Tree & Shrub, Inc., to verbally threaten Plaintiff, threaten Plaintiff with weapons, maintain a hostile work environment, withhold earnings, provide substandard housing and to cause Plaintiff to live in fear of deportation and bodily harm,

123.    Defendant Michael Kuka also used his agency relationship with L & K Tree & Shrub, Inc., to verbally threaten Plaintiff, threaten Plaintiff with weapons, maintain a hostile work environment, withhold earnings, provide substandard housing and to cause Plaintiff to live in fear of deportation and bodily harm,

124.    When Defendant Deborah Little oversaw, managed, controlled and directed L & K Tree & Shrub, Inc., by acting as its CEO, she was responsible for the acts of Defendants Patrick Little and Michael Kuka.

125.    As a direct and proximate result of the above-described conduct, Plaintiff suffered and will continue to suffer in the future: severe and permanent mental distress and emotional injuries, financial expenses for medical and therapeutic care and treatment; lost long-term earning capacity; as well as other damages.

126.     Plaintiff is entitled to recover damages in an amount to be proven at trial, including attorney's fees.

### Count XI

**Plaintiff Humberto Campis Abarca v. Defendants Patrick Little, Deborah Little, Michael Kuka, L & K Landscaping, Inc., and L& K Tree & Shrub, Inc.**

**Minnesota Statute § 609.284, subd. 2 - Civil Liability for Labor Trafficking**

127.     Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1-126 of this Complaint.

128.     Under Minnesota law, a "labor trafficking victim may bring a cause of action against a person who violates section 609.282 [knowingly engaging in labor trafficking].... The court may award damages, including punitive damages, reasonable attorney fees, and other litigation costs reasonably incurred by the victim."

129.     As described above, Defendants knowingly repeatedly recruited, harbored, obtained and transported Plaintiff to obtain labor and his services in violation of Minnesota law.

130.     Plaintiff is entitled to recover damages in an amount to be proven at trial, including attorney's fees.

### Count XII

**Plaintiff Humberto Campis Abarca v. Defendants Patrick Little, Deborah Little, Michael Kuka, L & K Landscaping, Inc., and L& K Tree & Shrub, Inc.**

**Negligent Hiring, Retention, Direction and Supervision**

131.     Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1-130 of this Complaint.

132.     At all times relevant to this action, the responsibilities of Defendants Deborah Little and L& K Tree & Shrub, Inc., included the hiring, retention, direction and supervision of Defendants Patrick Little and Michael Kuka.

133.     At all times relevant to this action, Defendant Deborah Little knew or should have known that Defendants Patrick Little and Michael Kuka were directly managing, supervising, controlling, directing and otherwise interacting with L & K Tree & Shrub, Inc., employees, including Plaintiff.

134.     At all times relevant to this action, Defendant Deborah Little had a special relationship to L & K Tree & Shrub, Inc., Defendants Patrick Little and Michael Kuka, and/or with Plaintiff.

135.     At all times relevant to this action, Defendant Deborah Little had a duty of care to properly hire, retain, direct, and supervise individuals of good reputation and character who directly managed, supervised, controlled and directed employees, including Plaintiff.

136.     At all times relevant to this action, Defendant Deborah Little negligently breached this duty by hiring or simply allowing Defendants Patrick Little and Michael Kuka, people that she knew or should have known were of bad character and reputation and incapable of properly supervising employees, including Plaintiff. She improperly and inadequately supervised Defendants Patrick Little and Kuka.

137.     At all times relevant to this action, Defendant Deborah Little knew or should have known that Defendants Patrick Little and Michael Kuka's intentional and negligent conduct would result in severe mental and emotional suffering by Plaintiff.

138.     As a direct and proximate result of the Defendant Deborah Little's negligent conduct, Plaintiff suffered and will continue to suffer in the future: severe and permanent mental distress and emotional injuries, financial expenses for medical and therapeutic care and treatment; lost long-term earning capacity; as well as other damages.

139.     Plaintiff is entitled to recover damages in an amount to be proven at trial, including attorney's fees.


## Count XIII

### Plaintiff Humberto Campis Abarca v. Defendants Patrick Little, L & K Landscaping, Inc., and L& K Tree & Shrub, Inc.

### Peonage (18 U.S.C. §§ 1581 & 1595)

140.     Plaintiff realleges and incorporates herein by reference the allegations set forth in paragraphs 1-139 of this Complaint.

141.     18 U.S.C. sections 1581 and 1595 impose civil liability on any person who "holds or returns any person to a condition of peonage, or arrests any person with the intent of placing him in or returning him to a condition of peonage."

142.     Defendant Patrick Little, as an individual and on behalf of Defendants L & K Landscaping, Inc., and L& K Tree & Shrub, Inc., persuaded Plaintiff to travel to the United States from his native Mexico with false promises of legal immigration status and work. Defendant Little, as an individual and on behalf of Defendants L & K

Landscaping, Inc., and L& K Tree & Shrub, Inc., promised to pay Plaintiff for services rendered.

143.     In making these promises, Defendant Patrick Little caused Plaintiff to incur large amounts of debt.

144.     Defendant Little, as an individual and on behalf of Defendants L & K Landscaping, Inc., and L & K Tree & Shrub, Inc., made Plaintiff work often seven days per week for years, with little or no breaks, to have his freedom restricted, and to fear for his life, all while living in substandard housing, in order to pay this debt back.

145.     As a result of the acts of Defendant Little, as an individual and on behalf of Defendants L & K Landscaping, Inc., and L& K Tree & Shrub, Inc., Plaintiff suffered damages. Pursuant to 18 U.S.C. section 1595, Plaintiff is entitled to recover damages and reasonable attorneys' fees for Defendant's wrongful conduct. Because of the malicious and wantonly abusive nature of Defendant Little's conduct, Plaintiff also is entitled to an award of punitive damages.


**Wherefore**, Plaintiff respectfully requests:

A. Compensatory damages against Defendant Little, Defendant L & K Landscaping, Inc., and Defendant L & K Tree & Shrub, Inc., jointly and severally, in an amount to be proven at trial;

B. For special damages against the Defendant Little, Defendant L & K Landscaping, Inc., and Defendant L & K Tree & Shrub, Inc., jointly and severally, in an amount to be proven at trial;

C.  For punitive and exemplary damages against Defendant Little, Defendant L & K Landscaping, Inc., and Defendant L & K Tree & Shrub, Inc., jointly and severally, in an amount to be proven at trial;

D.  Interest, reasonable attorneys' fees, expenses and costs pursuant to any applicable law;

E.  For injunctive relief that the Court deems just and proper; and

F.  For such other and further relief as may appear just and appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on any and all issues triable by a jury.

Respectfully submitted.

Dated: March 11, 2014

_____/s/ Angela Bortel_____

Angela Bortel

Attorney for Plaintiff